# Weyl v. Mount Sinai Cemetery Association of Pennsylvania.

*Furth, Singer & Bortin,* for plaintiff.

*Wolf, Block, Schorr & Solis-Cohen,* for defendant.

MARTIN, P. J., July 16, 1929.—In the bill filed in this case plaintiff avers that he has been the owner of a lot in Mount Sinai Cemetery since 1913; that the cemetery association is a corporation organized on July 1, 1853, under the laws of Pennsylvania; that he paid $100 for the lot, has complied with all the rules and regulations of the association, and met all payments and assessments required; that his burial-lot has a capacity of four graves, that two persons are now interred there, but there is room for the burial of plaintiff and his wife; that his wife died April 27, 1928, and on the following day plaintiff was informed by the officers of the defendant association that the interment of his wife in the cemetery would not be permitted, because she did not possess the qualification required by the charter, which provides that: "The object of this corporation shall be to purchase and provide a proper and suitable place for a cemetery, to divide the same into lots, to sell and dispose of such lots to individuals, societies or congregations, to be used only for the interment of deceased human bodies of those who by birth, profession or public declaration shall have been of the Jewish faith, under such conditions, restrictions, rules and regulations as the association or board of officers may, from time to time, establish for the government of lot-holders, burial of the dead, and visitors to the cemetery;" that plaintiff stated to the officers of the cemetery association that his wife was by birth, profession and public declaration of the Jewish faith; that he was born of Jewish parents, and was married, forty-six years previously to her death, by a Rabbi; that upon refusal of permission to bury her body in Mount Sinai Cemetery, plaintiff was obliged to purchase a lot and buried her in another cemetery; that the Mount Sinai Cemetery Association is not a religious institution or connected with any religious institution; it has always been conducted for profit, and the lots in the cemetery have greatly increased in value; that the plaintiff is deprived of the privilege of being buried by the side of his wife and of a son, who is buried in the cemetery.

The bill contains prayers for a mandatory injunction to restrain the officers and superintendent of the association from interfering with the interment of plaintiff's wife in the lot which he owns in the cemetery.

Defendant filed an answer admitting ownership of the lot by plaintiff, the incorporation of the defendant association, compliance by plaintiff with the rules and regulations, and the payment of all charges and assessments required. It is admitted that the lot has a capacity of four graves, and that only two bodies are now buried there; that it was the intention of plaintiff to bury the body of his wife in the lot; that his wife was born of Jewish

parents and had been married to plaintiff for a long time; that plaintiff buried the body of his wife in another cemetery, and that the cemetery association is not a religious institution. The answer also avers that the wife of plaintiff, at the time of her death and long prior thereto, had severed her affiliations with the Jewish faith and became a member of the Church of Christ Scientist; that the burial in this cemetery of a person not of the Jewish faith is contrary to the charter of the association and to its rules and regulations; that the constitution, by-laws, rules and regulations of the association have at all times been made to conform to conservative thought and opinions of the Jewish faith; and that the cemetery has from the time of its organization been so conducted that no person other than a person of the Jewish faith at the time of his or her death was knowingly permitted to be buried in the cemetery; that a person who became a member of the Church of Christ Scientist renounced and severed affiliation with the Jewish faith, even though born of Jewish parents; that this fact was known to plaintiff at the time he purchased the lot; that when he presented the request for permission to bury his wife in the cemetery, he was asked to sign a written statement that his wife was by birth of the Jewish faith and not affiliated with or a member of any other religious denomination or organization at the time of her decease; that he refused to sign the statement, and admitted that his wife was a member of the Church of Christ Scientist.

## Findings of fact.

1. The defendant, the Mount Sinai Cemetery Association of Pennsylvania, is a corporation organized on July 1, 1853, under the laws of Pennsylvania. The charter provides that: "The object of this corporation shall be to purchase and provide a proper and suitable place for a cemetery, to divide the same into lots, to sell and dispose of such lots to individuals, societies or congregations, to be used only for the interment of deceased human bodies of those who by birth, profession or public declaration shall have been of the Jewish faith, under such conditions, restrictions, rules and regulations as the association or board of officers may, from time to time, establish for the government of lot-holders, burial of the dead, and visitors to the cemetery." The association has always been under the exclusive management of persons of the Jewish faith, but is not connected with any religious institution.

2. On April 7, 1913, plaintiff purchased a lot in the cemetery and received a deed certifying "that Simon Weyl is entitled to lot number 3014, Section XVII, of the Mount Sinai Cemetery Association of Pennsylvania, subject to the rules and regulations and also to the payments and assessments thereon, and transferable only in person or by attorney at the Board of the Association." The lot has a capacity of four graves. Two bodies are now interred in the lot.

3. The plaintiff is of the Jewish faith. His wife was born a Jewess, and they were married by a Rabbi. Some years before her death she joined the Church of Christ Scientist, and thereby repudiated her Jewish faith. The doctrines of the Church of Christ Scientist are at variance with those of the Jewish faith. She continued a member of the Church of Christ Scientist until her death, April 27, 1928.

4. Plaintiff was refused permission to bury his wife in his lot in the cemetery of the defendant association because of the charter provision. At the time of the application for a permit, a form of declaration was submitted for his signature, reciting that his deceased wife "was by birth of the Jewish faith, and was not affiliated with or a member of any other religious denom-

ination or organization at the time of her decease." This statement he refused to sign.

5. On May 24, 1928, the defendant association adopted a resolution that: "The following regulations are formulated and will govern, and interments shall be granted only to those (A) who by birth shall have been of the Jewish faith, upon the certification of their next of kin or other close relative or friend, conversant with the facts, that the decedent was not affiliated with any other religious denomination or organization at the time of his or her decease; (B) who, though not of the Jewish faith, shall have become a Jew or Jewess, by formal acceptance into Judaism by an authorized Rabbi, according to the prescribed rabbinical rites. Evidence thereof must be submitted, either by a certificate of said Rabbi, to be lodged with this association, or by an affidavit or certificate of decedent's next of kin or other close relative or friend, conversant with the facts, and attesting thereto."

6. A son and a granddaughter of the plaintiff were buried in plaintiff's lot, and the religious ceremonies at the burials were conducted by the Christian Science Church; but there is no evidence that the officials of the cemetery association had any knowledge of the affiliations of the deceased or of the religious ceremonies at these burials.

### Discussion.

The rights of the parties in this suit cannot be determined by the opinions of witnesses as to how the Jewish church would interpret their rights, nor by action taken by the defendant association subsequently to the time plaintiff requested permission to bury his wife in his lot, but depend upon the provision in the charter declaring the purpose of the association and the rules and regulations adopted and in force at the time of the death of the wife of plaintiff. That this place of interment is a Jewish cemetery is apparent in its organization, in its management and by the purpose expressed in the charter. Any limitation upon the right of interment must be controlled by the charter, which provides for the interment of those who by birth, profession or public declaration shall have been of the Jewish faith. The words "shall have been" mean that the person shall have been of the Jewish faith at the time of death, and do not include persons who might have been of that faith for a time prior to death, but who were not of the faith when death occurred. The words "by birth, profession or public declaration" might be interpreted to extend to a person who had been born a Jew, or who had for a time professed or made public declaration of adherence to that faith; but in view of the declared purpose of the association and the intention to establish a cemetery for those of the Jewish faith, it is reasonable to presume that there was no intention to include as eligible for interment those who had at one time professed a belief in the faith, or who had been born Jews, but repudiated the faith prior to death. Interpreting the language of the charter in the light of the context and the spirit and reason of the words employed, it becomes apparent that a cemetery was established for the interment of persons born in the Jewish faith, or who professed or made a declaration of adherence to the faith and remained in the faith until death.

The purpose expressed in the charter cannot be enlarged or restricted by rules and regulations inconsistent with the charter purpose; but the statement submitted to plaintiff when he requested the permit to bury his wife was evidence that there was some regulation in force by the association interpreting the charter provision to limit the right of sepulchre to those who died in the Jewish faith. Plaintiff's wife, by joining the Church of Christ

Scientist and continuing in membership until her death, formally repudiated the Jewish faith; and plaintiff cannot compel defendant to permit her body to be buried in the cemetery of defendant if objection is interposed.

### Conclusions of law.

1. The certificate giving plaintiff the right of burial in the cemetery was subject to the provisions of the charter and the rules and regulations of the defendant association.

2. The object of the association as expressed in its charter is to provide a place for the burial of bodies of the Jewish faith.

3. The wife of plaintiff at the time of her death was not of the Jewish faith.

4. The defendant was within its rights in refusing to permit the burial of plaintiff's wife in the cemetery.

5. Plaintiff is not entitled to an order to compel defendant to permit the burial of his wife in Mount Sinai Cemetery.

6. The bill of complaint should be dismissed.

7. Plaintiff to pay the costs.

### Decree nisi.

It is ordered, adjudged and decreed as follows:

1. The prayer of the bill for a mandatory injunction to compel defendant to permit plaintiff to bury his wife in the cemetery of defendant is refused.

2. The bill of complaint is dismissed, at the cost of plaintiff.

3. The prothonotary is directed to give notice to the parties or their counsel of the filing of this decree nisi.